In re David M. KLAUS, Debtor.

Bankruptcy No. 98–01501–M.

United States Bankruptcy Court,
N.D. Oklahoma.

Jan. 11, 1999.

Stephen L. Oakley, Tulsa, OK, for Debtor.

Scott P. Kirtley, Tulsa, OK, Trustee.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Objection to Claim of Exemption (the "Objection") filed by Scott P. Kirtley ("Trustee" or "Kirtley") on August 19, 1998, and Debtor's Response to Trustee's Objection to Claim of Exemption (the "Response") filed by David M. Klaus, Debtor herein ("Debtor" or "Klaus"), on September 11, 1998. An evidentiary hearing (the "Hearing") was held in the matter on November 20, 1998. Kirtley appeared *pro se*. Klaus appeared personally and through his attorney, Stephen L. Oakley. The Court received evidence and heard argument from the parties. At the conclusion of the Hearing, the Court granted the parties leave to file additional briefs. As of December 11, 1998, the matter was taken under advisement.

The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(B).

### Burden of Proof

▉▉▉ The burden of proof is upon the objecting party (in this case, Kirtley) to establish by a preponderance of the evidence that an exemption was not properly claimed. *See* Fed.R.Bankr.P. 4003 (West 1999); *see also In re Simpson*, 206 B.R. 230, 232 (Bankr.E.D.Okla.1997). The homestead exemption statute should be liberally construed in favor of debtors to allow for the protection of the family and their home. *See In re Martin*, 875 P.2d 417, 422 (Okla.1994). Un-

der Oklahoma law, the existence and extent of a homestead are questions of fact to be determined by the trier of fact. *See In re Kretzinger*, 103 F.3d 943, 946 (10th Cir.1996).

### Findings of Fact

Klaus began operating a carpet business in the early 1990s. In 1991, he purchased approximately 4.33 acres of real estate located in the City of Sapulpa, Sapulpa County, Oklahoma (the "Property"). The Property has two separate street addresses: 1305 New Sapulpa Road and 1307 New Sapulpa Road. There are three buildings located on the Property, one of which was used for storage, one as a showroom for carpet sales, and the third of which Debtor alleges was converted to a residence in 1994. The Property is zoned for commercial uses.

Debtor owned and operated a carpet business on the Property until late 1997. Debtor has admitted that at least two of these buildings located on the Property were used for commercial purposes prior to the closing of the business.[2] Debtor has also admitted that he conducted business out of the third building (which he now claims as his residence) during the time period between December 1996 and September 1997, but that all business operations there ceased after September 1997. Notwithstanding the same, according to amended schedules and statement of affairs filed on June 16, 1998, Debtor is self-employed as a carpet installer. Debtor lists his business address as 1305 New Sapulpa Road, and indicated earnings of $3,600.00 from his business in 1998. Debtor has repurchased some of the carpet inventory from Kirtley.

In 1994, Debtor's marriage foundered. Prior to that time, Debtor had been living with his wife on an acreage located in rural Creek County, Oklahoma. Upon separation from his wife, Debtor claims to have remodeled one of the buildings on the Property, converting it to a residence (the "Resi-

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1999).

2. Debtor testified at the Hearing that one of the buildings was never used by him for any pur-

pose. However, in his response to the Objection, Debtor admitted that he *"did* conduct business in the structures upon the real estate not claimed as homestead." *Response*, ¶ 6 (emphasis added). The Court treats this statement as an admission.

dence"). The Residence has a street address of 1305 New Sapulpa Road. Debtor testified that his mother moved to the Residence two or three months prior to the time he moved to the property. According to Debtor, a kitchen, bathroom and living area are located on the lower level. Debtor's bedroom is on the upper level. Debtor's mother testified that she sleeps in the living area. Debtor testified that the carpet inventory which he purchased from Kirtley is being stored at the Residence.

An appraisal of the Property was completed in June of 1998. At that time, the appraiser was given complete access to the Property and all improvements located thereon, including the Residence. The appraiser made no mention of any improvements which would indicate that any portion of the Property was being used as a residence. The appraiser valued the Residence at $62,800.00, and the entire Property (with improvements) at $176,000.00. The appraiser also valued the Property assuming its use for commercial purposes.

No claim of homestead exemption for real estate tax purposes was ever filed by the Debtor with the appropriate taxing authorities. Debtor used the mailing address of the Residence (1305 New Sapulpa Road) for at least some of the billings for his carpet business.[3] The Property was initially purchased by Debtor as a single tract. A survey was completed on the property on September 11, 1998. Debtor used the survey to carve out a one acre tract (the "Tract") which he now claims as exempt. According to the survey, the Tract sits in the northwest corner of the Property. A significant portion of the highway access for the Property is included in the Tract. The survey carefully cuts around the balance of the other buildings and in effect excises the Residence from the remainder of the Property.

There has been no utility service to the Property since August of 1997. Debtor testified that the Residence is heated through the use of solar power and propane. A representative of the Trustee visited the Residence on November 19, 1998. She testified that there were no vehicles present at the Residence and that she could see no light coming from the Residence.

Upon oral motion of the Debtor, this case was converted to a case under Chapter 7 on June 18, 1998. Kirtley was appointed as Trustee on or about June 19, 1998. *See Docket No. 44.* Kirtley has proposed to sell the Property in its entirety to a Mr. John A. Rupe ("Rupe") for a total sales price of $162,-750.00. The only objection to the sale was filed by the Debtor, who objected on the grounds that any sale which included the Residence would violate his claimed homestead exemption. Debtor also testified that Rupe had offered Debtor approximately $100,000.00 more for the property prior to the filing of the bankruptcy case.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

This case raises the issue of whether a debtor may subdivide property whose primary use has been commercial and, in fact, "carve out" a fully exempt homestead, leaving the balance of the property for liquidation by the bankruptcy trustee. Pursuant to § 522 of the Bankruptcy Code, a Chapter 7 debtor may exempt certain property from the bankruptcy estate and place it beyond the reach of creditors, while non-exempt property becomes part of the bankruptcy estate. Oklahoma has chosen to opt-out of the federal exemption scheme, limiting the exemptions available in bankruptcy cases to those allowed under state law. *See* § 522(b)(1), and *see* Okla.Stat.Ann. tit. 31, § 1 et seq. (West 1991 & Supp.1998), respectively. Oklahoma state law provides for the following exemption regarding a debtor's homestead:

A. Except as otherwise provided in this title and notwithstanding subsection B of

---

**3.** The Trustee offered into evidence seven proofs of claim filed by various entities to whom Debtor owed money as a result of his carpet business. Each of the creditors showed the address of 1305 New Sapulpa Road as the business address of "Carpet Country," the trade name under which Debtor conducted his business.

this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

1. The home of such person, provided that such home is the principal residence of such person;

Okla.Stat.Ann. tit. 31, § 1 et seq. (West 1991 & Supp.1998). The statute places certain limitations on the type and amount of property which may be claimed as an exempt homestead:

**2. Homestead—Area and value—Indian allottees—Temporary renting**

\* \* \* \*

C. The homestead of any person within any city or town, owned and occupied as a residence only, or used for both residential and business purposes, shall consist of not exceeding one (1) acre of land, to be selected by the owner.

For purposes of this subsection, at least seventy-five percent (75%) of the total square foot area of the improvements for which a homestead exemption is claimed must be used as the principal residence in order to qualify for the exemption. If more than twenty-five percent (25%) of the total square foot area of the improvements for which a homestead exemption is claimed is used for business purposes, the homestead exemption amount shall not exceed Five Thousand Dollars ($5,000.00).

Okla.Stat.Ann. tit. 31, § 2(C) (West 1991 & Supp.1998). Under the latter statute, the use of the claimed homestead is the key to determining the scope of the allowed exemption. Where the property at issue is used solely for residential (i.e., non-business) purposes, a debtor may exempt a one acre tract without regard to its value. If the property constitutes a "mixed-use" property, the exemption is limited to $5,000.00 in value.

■ In order to qualify as a homestead for exemption purposes, two requirements must be met: (1) there must be a clear intent to make certain property a homestead as expressed by "overt acts of preparation in the erection of improvements and in preparation of the land for the home," and (2) the property must be occupied without undue postponement after the overt acts of preparation or a good faith attempt at occupancy must be made. *See In re Jones,* 107 B.R. 350, 351–352 (Bankr.E.D.Okla.1989). The validity of a claimed exemption is a question of fact to be decided by the trier of fact. *See In the Matter of Neis,* 723 F.2d 584, 589 (7th Cir. 1983); *see also In re Bradshaw,* 125 B.R. 782, 784–785 (Bankr.E.D.Wis.1991).

■ In a Chapter 7 bankruptcy case, all exemption entitlements (including that of homestead) are determined as of the date the case is filed. *See Mansell v. Carroll,* 379 F.2d 682, 684 (10th Cir.1967); *see also In re Duncan,* 107 B.R. 754, 756 (Bankr.W.D.Okla. 1988). When a case is converted to Chapter 7 from another chapter, some courts look to the date of conversion as the operative factual date for determining exemptions. *See e.g. In re Lindberg,* 735 F.2d 1087 (8th Cir.1984).[4] Debtor claims that because he terminated business operations prior to the filing of the bankruptcy case the Court should ignore the fact that the property at issue is zoned as a commercial property and was used for that purpose. The Court does not believe that it is confined to a "snapshot" of the Debtor's actions in the instant prior to the filing of the bankruptcy case. If this were the case, all a debtor would need to do is cease business operations the day, hour or minute prior to filing his or her bankruptcy case and claim that the court could not consider any commercial use of any property claimed as exempt. Such a conclusion is illogical and carries with it a high potential for abuse. Few, if any, debtors who seek relief under Chapter 7 of the United States Bankruptcy Code are engaged in an active business at the time the case is filed. Indeed, the failure of their business is often the event which precipitated

---

4. The United States Court of Appeals for the Tenth Circuit has not spoken on the issue. In *In re Marcus,* 1 F.3d 1050 (10th Cir.1993), the court ruled that the date of filing and not the date of conversion is the operative date for determining the applicable **law** of exemptions in a case. The court expressly left open the issue of whether a debtor could change his or her claim of exemptions based upon a change of fact after filing but before conversion. *See* 1 F.3d at 1051–1052.

the bankruptcy filing. The Court will not accept the argument that because a business has failed, the property which was used to operate the business no longer constitutes commercial property.

The Court accepts the statements made by Debtor and his mother that they have resided in the Residence since 1994. The only evidence in the record to contradict their statements are that: (1) the appraiser made no mention of the residential-type improvements to the Property when he conducted his appraisal; (2) an employee of the Trustee saw no vehicles or lights on at the Residence when she visited the premises the night before the Hearing; and (3) the utility service to the Residence has been discontinued since August of 1997. These facts, standing alone, are not sufficient to rebut the testimony of Debtor, his mother and his aunt. The Court finds that Debtor was occupying the Residence as his residence at the time this case was filed.

The Court does not accept Debtor's allegation that the Residence was not being used for business purposes at the time the case was filed. Certainly, this property was so used prior to the filing of the case; Debtor admitted the same. Creditors of the carpet business had been sending invoices to 1305 New Sapulpa Road since at least 1995.[5] *See Trustee's Exhibit 4.* On June 16, 1998, prior to the conversion of this case to a case under Chapter 7 of the Bankruptcy Code, Debtor filed documents with the Court under penalty of perjury which indicated that he was self-employed, and listing 1305 New Sapulpa Road as ·his business address. Debtor also made arrangements to purchase certain carpet inventory from Kirtley, and built shelves or racks at the Residence in order to store the same. If Debtor was not in the carpet business when he claimed the Residence as exempt, he certainly intended to be in the near future.[6]

The Court is also concerned with the one-acre selection made by Debtor. Although the Court is aware that a debtor has the right to select the property he or she claims as a homestead, the Court believes that such a selection must be made in good faith. The Oklahoma Supreme Court has not hesitated to look behind the literal language of the Oklahoma exemption statutes in order to do equity. *See e.g. Burrows v. Burrows,* 886 P.2d 984 (Okla.1994) (allowing ex-wife to set aside fraudulent transfer of homestead in order to satisfy past due child support and alimony even though statute would appear on

---

**5.** The Court is aware that bankruptcy courts in this state have ruled that the mere use of a residence for receipt and payment of bills does not in and of itself defeat a claimed homestead exemption. *See e.g., In re Ozey,* 171 B.R. 116 (Bankr.N.D. Okla 1994); *In re Hughes,* 166 B.R. 957 (Bankr.N.D.Okla.1994). Each of those cases are distinguishable on their facts as, in each case, the receipt and payment of bills was the only indicia of a business taking place at what was otherwise indisputably residential property.

**6.** The overwhelmingly commercial nature of this property is not lost on the Court. The following analysis of Judge Wilson is instructive on this point:

The mixed-use "exemption" is really a restriction on exemption, whose purpose is to prevent abuse of the basic homestead right. This restriction or penalty should be construed together with the homestead exemption of which it is a part. The "beneficent purpose" of the exemption statute as a whole is reconciled with the mixed-use penalty by giving the penalty a narrow construction and application, so as to penalize only clear abuse of the basic homestead right. Instances of clear abuse of the basic homestead right include the actual facts presented in *DeFord v. Painter* and the "apartment building" hypothetical posed in *In re Rashid.* Such instances involve the following circumstances or factors: the realty is not in a residential district; it is not of ordinary residential type, i.e. is not a "home" in the usual sense; the realty itself serves as a source of income for its owner; much or most of its total value is attributable to its business, rather than its homestead, function; identifiable portions of the realty are clearly non-residential and "business" in character and/or in continuing use, and would not be exempt but for their association with other portions of the realty which are homestead in character; yet severance of the business and homestead portions to protect the latter is not practicable. In such extreme circumstances, granting the basic urban homestead exemption would allow the debtor to use his homestead right to shield undoubted business property from execution. It would have the (residential) tail wag the (business) dog.

*In re Ozey,* 171 B.R. 116, 121 (Bankr.N.D.Okla. 1994). Virtually all of the factors noted by the Court in *Ozey* are present here.

its face to preclude such a result); *see also* *Kerns v. Warden*, 88 Okla. 297, 299, 213 P. 70 (1923) (homestead "cannot be converted into a shield of investments in lands from which rents and profits are to be derived") (citation omitted). Bankruptcy courts have also not hesitated to deny exemptions where the claimed exemption constituted an abuse of the statutory exemption claim. *See e.g. In re Spoor–Weston, Inc.*, 139 B.R. 1009, 1015–1016 (Bankr.N.D.Okla.1992), *aff'd*, 13 F.3d 407 (10th Cir.1993). The tract selected by the Debtor effectively "gerrymanders" around the structures which Debtor admits were used for commercial purposes, and takes a great deal of highway frontage from the balance of the property. The Court cannot help but believe that the dissection of this one acre tract will have a significant effect upon the value of the remaining property.

Debtor purchased the Property as a single tract. Prior to the filing of the bankruptcy case, he treated the Property as a single tract. Debtor's conduct while in a Chapter 13 bankruptcy case indicated his intent to sell the Property as a single tract.[7] This Court is confident that were it to grant Debtor the unlimited exemption which he seeks, the next matter of substance brought to the Court's attention in this case would be the allocation of the sale price of the Property to its exempt and nonexempt elements. This dispute is not about preserving the family home. It is about the distribution of money upon the sale of a commercial property.

Under Oklahoma law, where more than twenty-five per cent (25%) of the total square footage of the improvements on the claimed homestead is used for business purposes, the exemption is limited to $5,000.00. The total area of all of the improvements on the property is 14,504 square feet. *See Trustee's Exhibit 3.* Two of those three buildings,

with a total area of 11,279 square feet, were used solely for business purposes. If one considers all three buildings, it is certain that more than twenty-five per cent (25%) of their total square footage was used for business purposes. The Residence alone contains a total of 3,225 square feet. Even if the proposed dissection of the Property were appropriate, the Court has before it no evidence as to what portion of the Residence was and is being used by Debtor for business purposes.[8] Debtor is the only one in possession of such information. Debtor's exemption, whether one considers the entire Property or just the Residence, is limited to $5,000.00.

## Conclusion

The Objection to Claim of Exemption filed by Scott P. Kirtley, Trustee is sustained. Debtor is limited to an exemption of $5,000.00 in the property located at 1305 and 1307 New Sapulpa Road. A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith.

## *ORDER AND JUDGMENT*

THIS MATTER comes before the Court pursuant to the Objection to Claim of Exemption filed by Scott P. Kirtley on August 19, 1998, and Debtor's Response to Trustee's Objection to Claim of Exemption filed by David M. Klaus, Debtor herein, on September 11, 1998. The issues having been duly considered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the Objection to Claim of Exemption filed by Scott P. Kirtley be, and the same hereby is, sustained.

IT IS FURTHER ORDERED that the claim of homestead exemption made by David M. Klaus to the real property de-

---

7. On May 29, 1998, Debtor filed an Amended Chapter 13 Plan which provided for the sale of "all of the real property for cash to a non-insider, third parties to permit payment in full of all allowed secured and priority claims against the Debtor." *See Docket No. 27.*

8. The Court is relying upon Debtor's testimony that he used the Residence for business purposes in 1997 and Debtor's affirmation in his amended

bankruptcy schedules that he is self-employed as a carpet layer using the Residence as his business address in determining that the Residence was and is being used for business purposes. To the extent Debtor's testimony at the November 20, 1998, hearing contradicts the statements contained in Debtor's amended statement of affairs, the Court does not find such testimony to be credible.

scribed on Schedule "C" filed herein and with the street addresses of 1305 and 1307 New Sapulpa Road is limited to Five Thousand and no/100ths Dollars ($5,000.00).