## McKOY v. KEEL et al.

No. 20956. Opinion Filed Jan. 17, 1933.

Blanton, Osborn & Curtis, for plaintiff in error.

Wimbish & Wimbish and Yerker E. Taylor, for defendants in error.

WELCH, J. The plaintiff in error was the plaintiff below, and the defendants in error were the defendants below. The parties will be designated herein as plaintiff and defendants as they appeared in the trial court.

Plaintiff by his petition sought to recover possession of an undivided one-third interest in and to the E. ½ of the S. E. ¼ of the S. E. ¼ of section 27; and the N. ½ of the N. E. ¼ of the N. E. ¼ and the S. W. ¼ of the N. E. ¼ of the N. E. ¼ and the E. ½ of the N. W. ¼ of the N. E. ¼ and the N. E. ¼ of the S. W. ¼ of the N. E. ¼ and the N. W. ¼ of the S. E. ¼ of the N. E. ¼ of section 34, township 4 north, range 3 east of the Indian Base and Meridian, containing 90 acres in Garvin county, Okla.; sought to quiet title; sought partition and the judgment of the court determining the rents for the year 1923, and that same be charged against the defendants' interest in said lands. The lands were the surplus allotment of Ella McCalester, nee Keel, a member by blood of the Chickasaw Tribe of Indians, roll No. 866, who died intestate on January 11, 1921, leaving as her sole heirs her husband, Homer C. McCalester, and her two minor children, Bert Keel and Minthey McCalester, all unenrolled, who inherited the fee-simple title to said lands in equal shares. Plaintiff relies upon the following chain of title: Deed from Homer C. McCalester dated February 13, 1922, to J. U. Mayes, purporting to convey all of his right, title, and interest therein; deed from J. U. Mayes to plaintiff, Z. K. McKoy, dated April 21, 1922; deed from Homer C. McCalester to said plaintiff dated April 21, 1922. Plaintiff's petition was filed in the lower court on September 19, 1924.

The defendant Lizzie Keel alleges in her separate answer that she is the grandmother of the minor defendants, Bert Keel and Minthey McCalester; that she is in possession of the lands for the benefit of said minors; that said minors were placed in her care and custody by Homer C. McCalester shortly after the death of the allottee, his wife and the mother of said minors; denies that plaintiff owns an interest in said lands, or that he is entitled to possession of said lands, and denies that she is holding possession of said land wrong-

fully, and alleges that the deeds upon which the plaintiff bases title are champertous and void. The defendants Bert Keel and Minthey McCalester have answered by their guardian ad litem and allege that they are the children of the allottee, Ella McCalester, and are minors; that they, together with Homer C. McCalester, are the sole heirs of such deceased allottee; that at the time of her death the said Ella McCalester was the owner of the land involved herein, and that same was used and occupied by her and her family as her homestead. Each of said answers contain a general denial and assert that the land is still being occupied by the minors and their grandmother as a homestead.

A jury was waived and the cause was, on the 3rd day of November, 1927, tried to the court. At the close of the trial the court rendered judgment in favor of the defendants. The case-made contains a journal entry wherein the court found generally in favor of the defendants, and ordering that plaintiff take nothing by his suit, which appears to have been filed on July 15, 1929. The case-made also contains a journal entry which appears to have been filed on October 2, 1929, which finds that plaintiff is the owner of a one-third interest in the land, but denies immediate possession of such interest and until the homestead rights of the defendants have terminated. The case-made further contains an order of the court dated October 7, 1929, whereby the court ordered the journal entry filed July 15, 1929, expunged and stricken from the records of the court.

Plaintiff has appealed and presents for consideration here, among his assignments of error: (1) That said judgment is contrary to law; (2) said judgment is contrary to the evidence; (3) said judgment is contrary to the great weight of the evidence; (4) the court erred in holding that the homestead right existed in said defendants in and to said lands; (5) the court erred in refusing to quiet title of the plaintiff in and to his undivided interest in said lands and in refusing to direct partition thereof. The defendants, Bert Keel and Minthey McCalester, minors, by their guardian ad litem, have filed their cross-petition in error, assigning as error the trial court's action in setting aside the journal entry of judgment filed in said cause on July 15, 1929.

As we view it, the only question necessary for determination of the issues herein is whether or not the judgment of the lower court is supported by the evidence, and whether or not the deeds upon which

the plaintiff bases his title were taken in violation of the provisions of section 1679, Compiled Stats. 1921 [O. S. 1931, sec. 1940] and therefore champertous and void.

We have carefully examined the record of the testimony of all of the witnesses introduced at the trial.

The undisputed evidence is that Ella McCalester, the allottee, owned other land which was her allotive homestead; that such homestead portion of her lands lay immediately across the highway from the portion of the lands involved herein; that there were never any buildings on any of her lands; that Ella McCalester and her family had resided within approximately one-half mile of her homestead allotment and the lands herein for about one year immediately preceding her death on lands belonging to other persons.

Homer C. McCalester, testifying as a witness for plaintiff, testified as follows:

"Q. At the time of her death, did you and your wife, Ella Keel (McCalester) occupy any portion of this allotment, either homestead or surplus, or live on it? A. Yes, sir; the homestead on the east side. Q. On the east side of what? A. Of the road. Q. Did you live on it? A. No, sir. Q. Have you put any improvements on it? A. No, sir; we did not have any improvements. Q. Was that the surplus or homestead allotment of Ella McCalester, your wife? A. It was the homestead. Q. Was it your intention to occupy that land on the east side of the highway as your homestead? A. Yes, sir. Q. On which side of the highway was the surplus allotment of your wife? A. Well, it was on the west. Q. Did you and your wife ever occupy this land on the west side of the highway as a home? A. No, sir. Q. Did you ever intend to occupy this surplus land on the west side of the highway as a homestead? A. No, sir. Q. Did you ever make any improvements on this surplus allotment? A. No, sir. Q. Did you ever build any houses, any barns, on the surplus allotment? A. No, sir. Q. Did you ever make any improvements on the homestead? A. No, sir. Q. Did you ever do any work on the homestead of any character in the way of farming? A. Nothing, only fenced the side next to the highway, and broke out one little corner. Q. As head of the family, what did you intend to do with this surplus allotment prior to the death of your wife? A. Well, we was aiming to sell it and build a home. Q. Where? A. On the homestead on the east side of the road. Q. Was that your intention up to the time of the death of your wife? A. Yes, sir."

Lizzie Keel, introduced as a witness by the defendants, testified as follows:

"Q. Where did they live before she died (referring to Homer and Ella McCalester)? A. They lived on Ida Keel's place south of

Stratford about a mile. Q. What land did Homer McCalester work that year? A. Well, he worked Ida Keel's land. Q. What about this land that is in controversy; did he work any of it? A No, he worked 10 acres of his wife's own homestead—about a mile from there. Q. Do you know what your daughter's intention was as to whether or not they were going to establish a homestead on any of this land? A. Well, I don't know any more than what she said (objected to by Mr. Osborn as hearsay; objection overruled, exceptions saved). Well, Ella told me she wanted to build out there just south—(Question objected to and overruled by the court, exception saved). Q. Go ahead, Mrs. Keel, answer the question; what did Ella say about it? A. Well, she said that she was going to build on it. Q. For what purpose? A. Well, for a home I suppose. Q. How far was this house they lived in from Ella's land? A. Well, about one-half mile."

Homer C. McCalester, again called as a witness for the plaintiff, testified as follows:

"Q. Mr. McCalester, did your wife, Ella McCalester, prior to her death, ever express to you her intention as to where you would have your homestead? (Objected to, objection overruled, exception saved.) A. Yes, sir; we had said—we had figured where we was going to build our home. Q. Where? A. On the east side of the road. Q. On the east side of the highway? A. Yes, sir."

Lizzie Keel, again called as a witness for the defendants, testified as follows:

"Q. Did he (referring to Homer McCalester) do anything with her land in the way of making any improvements during his married life or after her death? A. No, sir. Q. But they used it (referring to lands involved herein) only by hiring out the pasture and letting folks put their stock in there at so much per head per month? A. Yes, sir. Q. Nothing was ever done by Homer McCalester nor Ella McCalester in the way of living on this land was there? A. No, sir."

One of the assignments of error urged in plaintiff in error's brief for reversal is that the findings and judgment of the trial court are not sustained by the evidence. We have carefully read the record, and are of the opinion that it should be sustained. There is an absence of any evidence tending to show that the land involved in this controversy was ever impressed with the homestead character, and while it is true that

"Intention is the prime element necessary for the purpose of impressing homestead character upon land prior to actual occupancy, this intention must be manifested by such act as to give at least a reasonable notice of intention. * * * This intention should not only be in the minds of the parties, but should be evidenced by some unmistakable acts, showing intention to carry out such design. The mere intention to occupy unimproved land at some future time, unaccompanied by any overt act of preparation of the land for a home, such as construction of buildings and making improvements thereon, without unreasonable delay, is insufficient to impress the land with the homestead character." Jefferson v. Henderson, 140 Okla. 86, 282 P. 677.

We are unable to find any evidence in the record tending to show an intention to occupy the lands in controversy as a homestead, or that any preparation was made toward so occupying same.

"Where a case tried before the court without a jury, as where it is tried before a jury, if there is absence of any evidence reasonably tending to support the findings of the court, the finding of the court and the judgment thereon will be set aside on appeal." Hampton v. Thomas, 35 Okla. 529, 130 P. 961.

The defendants Bert Keel and Minthey McCalester, minors, by their cross-petition, contend that the deeds under which plaintiff claims title are champertous and void.

The pleadings and undisputed evidence show that the allottee, Ella McCalester, died January 11, 1921, leaving her husband, Homer C. McCalester, and her children, Bert Keel and Minthey McCalester, as her sole heirs. On February 13, 1922, Homer C. McCalester made a deed to J. U. Mayes, purporting to convey his interest in said land; on April 21, 1922, Homer C. McCalester made a deed conveying his interest in the land to the plaintiff, Z. K. McKoy, and on the same date the plaintiff took a deed from J. U. Mayes. Homer C. McCalester testified that "the deal with Mayes fell through," and this testimony is not controverted. If a delivery of the deed from McCalester to Mayes was never made, Homer C. McCalester, as the heir at law of his deceased wife, remained the owner of an undivided one-third interest in the land up to the time he conveyed same to the plaintiff herein. The evidence fails to show adverse possession, and we hold that the facts proved in this case do not bring it within the principles of law as announced in the cases of International Land Co. v. Smith, 103 Okla. 101, 229 P. 601; Sanders v. Leforce, 93 Okla. 128, 219 P. 925; and Canfield v. Jack, 78 Okla. 127, 188 P. 1040, cited in the brief of these defendants.

The undisputed testimony in this case shows that immediately after the death of the allottee, the owner of these lands, Homer C. McCalester, the surviving husband, left the children of his deceased wife with Lizzie Keel, their grandmother. Lizzie Keel

has had the care and custody of these children since the death of their mother, and has claimed possession of the land for the benefit of these minors, and has collected the rents therefrom up to the date of the trial of this cause; she has never at any time claimed ownership of said lands. Lizzie Keel testified that Homer C. McCalester upon leaving her said to her, "I will leave the lands with you, and do not be uneasy— I will take the baby." And again in answer to question:

"Q. State to the court whether or not you claimed and contended all the time, whether right or wrong, that Homer C. McCalester had no interest in this land and you were keeping it for these children? A. I am keeping it for the children."

We hold that under the facts in this case the possession of the lands involved herein was through the heirs of Ella McCalester, deceased, and in subordination to the title of such heirs and held for their use and benefit, and was not adverse to the rights of any such heirs, and that the deed from one of the heirs to plaintiff herein was not made in violation of section 1679, C. O. S. 1921 [O. S. 1931, sec. 1940] and that same is therefore not champertous and void.

"Where land conveyed, though not in the possession of the grantor, is not held adversely by the occupant, the deed is valid." Flesher v. Callahan, 32 Okla. 283, 122 P. 489.

In view of the conclusions hereinabove reached, we deem it unnecessary to consider the authority of the trial court with reference to the two separate journal entries found in the record herein.

For the reasons above stated, the judgment of the trial court is reversed and the cause remanded, with directions to the trial court to recognize plaintiff's title to an undivided one-third interest in the lands involved, and plaintiff's right to partition thereof, and with directions to proceed further with the cause, consistent with this decision.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and BUSBY, JJ., concur. OSBORN, J., disqualified and not participating.

Note: See under (1, 2) annotation in 50 L. R. A. (N. S.) 1128, 1129; 13 R. C. L. 593; R. C. L. Perm. Supp. p. 3391. (3) 5 R. C. L. 280 et seq.; R. C. L. Perm. Supp. p. 1352. (4) annotation in L. R. A. 1916B, 565 et seq.; 2 R. C. L. 202 et seq.; R. C. L. Perm. Supp. p. 377; R. C. L. Pocket Part, title "Appeal," § 172.